United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ROKSANA MEDANI, et al.,

Plaintiffs,

v.

DONALD J. TRUMP, et al.,

Defendants.

Case No. 5:26-cv-06332-EJD

**ORDER GRANTING IN PART MOTION FOR CLASS CERTIFICATION; GRANTING IN PART MOTION FOR PRELIMINARY INJUNCTION**

Re: Dkt. Nos. 54, 55

Plaintiffs challenge three agency policies promulgated by United States Citizenship and Immigration Services ("USCIS") and United States Department of State ("DOS") that place indefinite holds on their Diversity Immigrant Visa applications. Compl., ECF No. 1. Before the Court is Plaintiffs' motion for class certification and motion for a preliminary injunction. Class Cert. Mot., ECF No. 54; Opp'n to Class Cert. Mot., ECF No. 69; Reply ISO Class Cert., ECF No. 71; Prelim. Inj. ("PI") Mot., ECF No. 55; Opp'n to PI Mot., ECF No. 70; Reply ISO PI Mot., ECF No. 70.

The Court held a hearing on August 27, 2026, and heard oral arguments from all parties. ECF No. 82. For the reasons stated below, the Court **GRANTS IN PART** both motions.

## I. BACKGROUND

### A. The Diversity Immigrant Visa Program

Each fiscal year, DOS holds a "lottery" in which it randomly selects noncitizens from countries with historically low rates of U.S. immigration for the opportunity to apply for a Diversity Immigrant Visa ("Diversity Visa"). Successful Diversity Visa applicants receive the

benefit of lawful permanent residency (also commonly referred to as a "green card"), meaning the ability to live, study, and work in the United States indefinitely. *See Green Card Through the Diversity Immigrant Visa Program*, USCIS, available at https://www.uscis.gov/green-card/green-card-eligibility/green-card-through-the-diversity-immigrant-visa-program (last accessed Aug. 27, 2026).

Selection to the Diversity Immigrant Visa Program alone "does not guarantee that they will receive a visa, only that they will be given an opportunity to apply for one." *See Babamuradova v. Blinken*, 633 F. Supp. 3d 1, 6 (D.D.C. 2022) (citation omitted). Pursuant to 8 U.S.C. § 1151, the number of Diversity Visas issued each fiscal year must not exceed 55,000.[1] 8 U.S.C. § 1151(e) ("The worldwide level of diversity immigrants is equal to 55,000 for each fiscal year."). However, DOS selects more than 55,000 applicants to "ensure that all DV-2026 numbers can be used during fiscal year 2026." U.S. Dep't of State, Visa Bulletin, Vol. XI, No. 8 (November 2025). Once all available Diversity Visas have been issued for the fiscal year, the program ends; otherwise, selectees remain eligible to receive a Diversity Visa until September 30 of the fiscal year for which they are selected. 8 U.S.C. § 1154(a)(1)(I)(ii)(II).

If the selectee resides outside of the United States, they must complete consular processing with DOS through a U.S. embassy or consulate abroad. *See* 22 C.F.R. § 40.1(1)(2). Selectees abroad must meet all eligibility requirements, submit to a medical examination, pay the applicable fees, and attend an interview. *See* 22 C.F.R. §§ 40.1(1)(2), 42.33; *see also* 8 U.S.C. § 1182(a). Interviews are scheduled according to a random monthly regional lottery "rank number." 9 FAM 502.6-4(c)(2). Selectees can only schedule an interview "once (1) the selectee has submitted a complete DS-260; (2) the designated post has made an appointment available; (3) KCC has completed its processing of the selectee's case; and (4) the Visa Office has allocated a visa number to the selectee and, if any, the selectee's derivatives, and the selectee's case is the next case in the

[1] During oral arguments, Plaintiffs noted the number of available visas may have decreased to 50,000. However, both parties' briefing identifies 55,000 available visas, and the most recently available text of 8 U.S.C. § 1151(e) still indicates "[t]he worldwide level of diversity immigrants is equal to 55,000 for each fiscal year."



United States District Court
Northern District of California

United States District Court
Northern District of California

selection order." 9 FAM 502.6-4(c)(1)(b); *see also* 9 FAM 502.6-4(c)(2)(c).

If a selectee is physically present in the United States under a non-immigrant[2] visa at the time of selection, they must submit an I-485 Form with USCIS to adjust their status to permanent resident (also referred to as "adjustment of status" or "AOS"). *See I-485, Application to Register Permanent Residence or Adjust Status*, USCIS, available at https://www.uscis.gov/i-485 (last accessed Aug. 27, 2026). Selectees applying for adjustment of status through USCIS must also meet all eligibility requirements, submit to a medical examination, pay the applicable fees, and attend an adjustment of status interview at a USCIS field office. As with those applying abroad, Diversity Visa selectees can file for adjustment of status only when the selectees' rank number is below the relevant regional rank number cut-off in either the current month's availability that is announced on DOS's Visa Bulletin or the advance notice DV availability announced for the following month. USCIS, *Policy Manual*, Vol. 7 Pt. G, Ch. 2.

**B. The Three Policies**

DOS and USCIS recently promulgated three policies impacting the adjudication of all Diversity Visas (collectively, "Three Policies").

First, on December 19, 2025, the Department of Homeland Security ("DHS") issued PM-602-0193, a Policy Memorandum titled "Hold and Review of Pending USCIS Adjustment of Status Applications Filed by Aliens Under the Diversity Immigrant Visa Program" ("USCIS Hold"). Compl., Ex. A ("USCIS Hold"), ECF No. 1-3. This memorandum immediately and indefinitely paused final adjudication of all pending I-485 applications under the Diversity Immigrant Visa Program. *Id.* Specifically, the memorandum directs USCIS to place "a hold on all pending adjustment of status, ancillary benefits, and associated waiver applications" filed by Diversity Visa adjustment applicants pending "comprehensive review." *Id.* ¶ 1. There is no date

[2] Unlike "immigrant visas" such as the Diversity Visa, "nonimmigrant visas" provide temporary authorization to be physically present in the United States. *See* USCIS, *Requirements for Immigrant and Nonimmigrant Visas*, available at https://www.cbp.gov/travel/international-visitors/visa-waiver-program/requirements-immigrant-and-nonimmigrant-visas (last accessed Aug. 27, 2026).

United States District Court
Northern District of California

identified on which the "comprehensive review" will be completed.

Second, on December 20, 2025, DOS published a document titled "Updated Diversity Visa Guidance" ("DOS DV Pause"). Compl., Ex. B ("DOS DV Pause"), ECF No. 1-4. The policy "pause[d] all visa issuances to diversity immigrant visa applicants." *Id.* It explains that selectees can be scheduled for and attend interviews, and consular officers can determine applicants are ineligible, but no visas can be issued. *Id.* There is no date identified on which officers may resume approving visas.

Third, on February 2, 2026, DOS issued a "Notice Pausing Visa Approval for 75 Countries" ("DOS 75-Country Pause") effective January 21, 2026, whereby DOS "paused" issuing immigration visas to applicants who are nationals of 75 countries to address "high risk" of applicants becoming a U.S. public charge. Compl., Ex. C ("DOS 75-Country Pause"), ECF No. 1-5.[3] The policy requires consular officers to refuse all immigrant visa applicants until the agency develops new policies, regulations, and guidance to enable consular officers to assess if an applicant might become dependent on public assistance once in the United States. *Id.* There is no date identified on which the updated policies, regulations, and guidance will be completed.

### C. Plaintiffs

Plaintiffs are FY-2026 Diversity Visa selectees and their families who have submitted Diversity Visa applications to DOS or USCIS—84 families are physically present in the United States and subject to the USCIS Hold ("AOS Families"); 577 families are currently outside the United States and subject to the DOS DV Pause ("Consular Processing Families"); and 444 of the Consular Processing Families are also subject to the DOS 75-Country Pause based on their nationality ("75-Country Families").

---

[3] A district court in the Southern District of New York recently issued an order vacating the DOS 75-Country Pause. *Cath. Legal Immigr. Network, Inc. v. Rubio*, No. 26-CV-00858 (JAV), 2026 WL 2455099 (S.D.N.Y. Aug. 21, 2026). However, given the recency of this directive and the imminent potential for appeal, the Court will continue considering the DOS 75-Country Pause here. *See Shahi v. Edlow*, No. 5:26-CV-03113-EJD, 2026 WL 2041468, at *2 (N.D. Cal. July 14, 2026) (citing *Hedyati v. Edlow*, Case No. 26-cv-04054-VKD, at *11 (N.D. Cal. July 7, 2026) (finding same)).

Plaintiffs initiated this case on June 24, 2026, alleging nine claims on behalf of themselves and a proposed class of other Diversity Visa applicants: mandamus relief; Administrative Procedures Act ("APA") § 706(1); APA § 706(2)(A)–(D); INA § 1152(a)(1)(A); 5th amendment equal protection and due process (only as to AOS Families); and violation of the separation of powers, nondelegation doctrine, and major question doctrine. Plaintiffs argue the Three Policies constitute a concerted effort by the Executive Branch to effectively end the Diversity Immigrant Visa Program without congressional approval. *See* Compl. ¶ 157.

Plaintiffs propose the following class:

> all selectees and derivative beneficiaries under the FY-2026 Diversity Visa Program who are subject to (1) the USCIS DV Hold imposed by Policy Memorandum PM-602-0193 (December 19, 2025), (2) the DOS DV Pause (December 23, 2025), or (3) DOS 75-Country Pause (Jan. 14, 2026).

*Id.* ¶ 5. In the alternative, Plaintiffs seek to certify three subclasses for each policy pursuant to Federal Rule of Civil Procedure 23(c)(5).

## II. DISCUSSION

The Court will examine in turn Plaintiffs' motion for class certification and motion for preliminary injunction.

### A. Motion for Class Certification

To secure class certification, plaintiffs must show that: (1) each of the criteria in Rule 23(a)—numerosity, commonality, typicality, and adequacy—are satisfied, and (2) "the class fits into one of three categories" in Rule 23(b). *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022).

#### 1. Rule 23(a)

Beginning with Rule 23(a), the Court finds Plaintiffs met their burden to show each element is satisfied.

##### a. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although there is no exact numerical cut-off for when a

United States District Court
Northern District of California

proposed class is "so numerous that joinder of all members is impracticable," courts often will presume that this requirement is satisfied when the class exceeds forty members. Fed. R. Civ. P. 23(a)(1); *see, e.g., Arroyo v. Int'l Paper Co.*, No. 17-CV-06211-BLF, 2019 WL 1508457, at *2 (N.D. Cal. Apr. 4, 2019).

Here, the Three Policies impact the entire FY-2026 Diversity Visa selectee population still in process, and named Plaintiffs alone reach nearly 1,500 in number. Under these circumstances, the Court finds joinder of all members impractical and numerosity satisfied.

**b. Commonality**

Rule 23(a)(2) requires there to be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A common question is one that "is capable of classwide resolution," meaning that answering the question "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The key factor of commonality is whether the common question generates "common answers." *Id.* However, plaintiffs need not show that *all* questions are common; they need only identify a "single significant question of law or fact." *Stockwell v. City & Cnty. of San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014); *see also Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (finding a single significant common question sufficient). Particularly relevant here, commonality is generally satisfied where a lawsuit "challenges a system-wide practice or policy" that impacts the proposed class members. *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001).

Here, Plaintiffs contend there are at least three common questions capable of classwide resolution:

> (1) Whether the Barriers exceed Defendants' statutory authority, violate the separation of powers and the nondelegation and major questions doctrines, and are contrary to constitutional right under 5 U.S.C. § 706(2)(B);
> (2) Whether the Barriers unlawfully withhold or unreasonably delay agency action and breach Defendants' non-discretionary duty to adjudicate, in violation of 5 U.S.C. §§ 555(b), 706(1) and 28 U.S.C. § 1361; and
> (3) Whether the Barriers are arbitrary and capricious under 5 U.S.C. § 706(2)(A) and were promulgated without the notice-and-comment rulemaking required by § 706(2)(D).

Class Cert. Mot. 8.

The parties cite several relevant cases examining commonality in regard to claims challenging "policies." Most notably, the Supreme Court in *Wal-Mart* examined commonality in regard to a proposed class of employees bringing gender discrimination claims against their employer Wal-Mart. *Wal-Mart*, 564 U.S. at 350. The Court there found no commonality because the employees' harm did not result from a "uniform policy," but rather, from various discretionary decisions made by thousands of individual store managers operating under a corporate policy of decentralized authority. *Id.* at 350–52. "Without some glue holding the alleged reasons for all those decisions together," the Court found it "impossible to say that examination of all the class members' claims for relief will produce a common answer." *Id.* at 352.

The Ninth Circuit later applied *Wal-Mart*'s holding in *Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014). The Circuit there found commonality satisfied because, unlike the plaintiffs in *Wal-Mart*, the plaintiffs in *Parsons* challenged the same Arizona Department of Corrections ("ADC") policies that allowed for systemic deficiencies in conditions of confinement in isolation cells and in the provision of medical care. *Id.* at 688 ("In this case, all members of the putative class and subclass are allegedly exposed to a substantial risk of serious harm by a specified set of centralized ADC policies and practices of uniform and statewide application. While each of the certified ADC policies and practices may not affect every member of the proposed class and subclass in exactly the same way, they constitute shared grounds for all inmates in the proposed class and subclass."). The Circuit found the existence of uniform policies provided the "glue" holding the class together, and the legality of those policies could be resolved "in one stroke." *Id.* at 678; *see also B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 971–72 (9th Cir. 2019) (commonality satisfied where uniform state policies governed treatment of foster children).

Plaintiffs also cite *MadKudu Inc. v. U.S. Citizenship & Immigr. Servs.*, No. 20-CV-02653-SVK, 2020 WL 7389419, at *7 (N.D. Cal. Nov. 17, 2020), where the court certified a nationwide Rule 23(b)(2) class of employers challenging USCIS's pattern and practice of denying H-1B petitions for market research analyst positions based on a uniform misapplication of the regulatory

standard. The court in *MadKudu* rejected the government's argument that case-by-case adjudication of individual petitions defeated commonality, reasoning that "the underlying facts of each petition is not relevant to a determination of class membership" and that "individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality." *Id.* (quoting *Armstrong*, 275 F.3d at 868).

Plaintiffs argue the facts here are similar to those in *Parsons* and *MadKudu*, and Defendants argue *Wal-Mart* is on point. The Court finds Plaintiffs' position more persuasive—but only if the proposed class is divided into subclasses according to each policy. Fed. R. Civ. P. 23(c)(5) ("When appropriate, a class may be divided into subclasses that are each treated as a class under this rule.").

To begin, the Court finds Plaintiffs failed to show the proposed *single class* satisfies the commonality requirement. Each "common question" Plaintiffs pose in fact contains three questions—whether the (1) USCIS Hold, (2) DOS DV Pause, and (3) DOS 75-Country Pause violate various APA sections and the Fifth Amendment. Answering the question of whether the DOS DV Pause is unlawful does not, for example, impact the AOS Families awaiting adjudication from USCIS; just as answering the question of whether the USCIS Hold is unlawful does not impact the Consular Processing Families. And each policy requires examining different agency actions, administrative records, statutory authorities, and other issues specific to each policy. It is true, as Plaintiffs highlight, that Rule 23(a)(2) does not require identical claims or injuries. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). But here, each part of the "common" question impacts a different population of the class, such that relief could not be provided "in one stroke"; it would be provided in three strokes.

However, this does not doom Plaintiffs' motion—the Court finds these commonality issues cured by Plaintiffs' proposed alternative subclasses:

> (1) all selectees and derivative beneficiaries under the FY-2026 Diversity Visa Program who are subject to the USCIS DV Hold imposed by Policy Memorandum PM-602-0193;
> (2) all selectees and derivative beneficiaries under the FY-2026 Diversity Visa Program who are subject to the DOS DV Pause;

United States District Court
Northern District of California

and

(3) all selectees and derivative beneficiaries under the FY-2026 Diversity Visa Program who are subject to the DOS 75-Country Pause.

As the Court indicated above, Plaintiffs need only a "single significant question of law or fact" to establish commonality. *Stockwell*, 749 F.3d at 1111. Here, each subclass shares significant questions of law—namely, the legality of each policy under the APA, which impacts all subclass members the same.[4] Further, the Court finds it appropriate to adjudicate these subclasses' claims in one action. The Three Policies together effectively create a system whereby no remaining Diversity Visa selectee can secure a FY-2026 Diversity Visa.

Defendants' arguments to the contrary fail. First, Defendants highlight that, similar to *Wal-Mart*, Diversity Visa adjudication requires extensive discretionary decisions made by thousands of consular officers and USCIS officials. This is true. But unlike *Wal-Mart*, there are no individual decisions being challenged here. The Three Policies are "uniform" and apply in the same way to all Diversity Visa applicants. Rather than challenging the determination of any one application—an area in which the Court likely lacks jurisdiction in any event—Plaintiffs challenge the agencies' categorical decisions to cease adjudication and/or approval of the applications all together. In this way, these claims share similarities with *Parsons* and *MadKudu* rather than *Wal-Mart*.

Second, Defendants highlight that, unlike in *Parsons*, the allegations here concern two different agencies with varying resources that are considering applicants with different rank number orders, some of which may not even get the opportunity to schedule an interview and make an application for an immigration benefit. These facts, while also perhaps true, also do not defeat commonality. All subclass members would receive relief if the Court, for example, grants their request to vacate the policies. They still may not ultimately have their applications

[4] For this reason, the Court rejects Defendants' argument that commonality is defeated because AOS Families have pled separate claims under the Fifth Amendment. The Court also rejects Defendants' argument that there would be no common answer to the unreasonable delay claim because the different stages and circumstances of each application would affect the *TRAC* analysis.

adjudicated by USCIS or DOS, but they will have reclaimed the *opportunity* for adjudication that they had previously lost under the Three Policies.

For these reasons, the Court finds commonality satisfied as to the three proposed subclasses and will proceed by examining the remaining factors for each subclass rather than the proposed single class.[5]

**c. Typicality**

To satisfy Rule 23's typicality requirement, class representatives must show that their claims are "reasonably coextensive with those of absent class members," though their claims "need not be substantially identical." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017). When "there is a danger that absent class members will suffer [because] their representative is preoccupied with defenses unique to it," a class representative is not typical. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). The Ninth Circuit's standard for typicality is permissive, requiring only that the claims arise from the same course of conduct and rest on the same legal theory. *Hanon*, 976 F.2d at 508; *Just Film*, 847 F.3d 1108; *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

Plaintiffs argue that no named Plaintiff is subject to any defense that does not also apply to the entire class because this case will turn on the same questions for every class member—i.e., whether Defendants have authority to impose the Three Policies, whether the Three Policies comply with the APA, and whether the Three Policies violate the INA and the Constitution.

Defendants' response, in some ways, mirror arguments examined in the section prior. Defendants argue that class representatives are vulnerable to unique defenses atypical to the class because their applications are pending at different stages of different processes that entail different statutory and regulatory frameworks for different immigration benefits. Defendants also argue each Plaintiff would need to show they are entitled to adjudication within the specified time period

---

[5] As Defendants highlight, to be certified under Rule 23(c)(5)—which permits a class to be divided into subclasses "when appropriate"—each subclass must independently meet the requirements of Rule 23. *See Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981).

United States District Court
Northern District of California

and that no legal exceptions or bars apply to their case.

Again here, the Court finds Plaintiffs' position more persuasive. This case will ultimately rise or fall on the lawfulness of the Three Policies, not on any individual Plaintiff's application. *See, e.g., Jane Doe 1 v. Nielsen*, 357 F. Supp. 3d 972 (N.D. Cal. 2018) (holding that typicality was satisfied where class members had differing immigration statuses because their claims arose from the same challenged government conduct). Individualized visa application and eligibility issues are not at issue here; the only task before the Court is to examine the lawfulness of the Three Policies. It is then for USCIS or DOS to adjudicate the applications according to their pre-existing policies and procedures and decide whether certain applicants are subject to different lawful exceptions or bars of admissibility.

The Court therefore finds typicality satisfied as to each subclass.

**d. Adequacy**

Adequacy is satisfied if the representative and her counsel (1) do not have a conflict of interest with the rest of the class and (2) will vigorously prosecute the action on behalf of the class. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

Plaintiffs argue adequacy is satisfied because proposed class counsel seek classwide injunctive and declaratory relief that would benefit every class member identically: an injunction against the Three Policies and a declaration that they are unlawful. Where the relief sought would benefit all class members equally, courts generally find no adequacy concerns. *Mansor v. United States Citizenship & Immigr. Servs.*, 345 F.R.D. 193 (W.D. Wash. 2023). Counsel also provides that they have extensive relevant experience in federal immigration litigation and represent no party with interests adverse to the subclasses.

Defendants argue Plaintiffs' counsel are inadequate because they are also counsel in a similar case against Defendants raising identical claims in *Ivanov v. Trump*, No. 26-00915-AHA (D.D.C. Mar. 15, 2026). According to Defendants, "[a]ny decision that touches on the merits in either case . . . could pose a potential conflict that impedes Mr. Morrison from properly serving the Single Class or any of the Subclasses." Opp'n to Class Cert. Mot. 13.

United States District Court
Northern District of California

Plaintiffs rebut, and the Court agrees, that all Defendants present is a hypothetical, unidentified conflict, and the Ninth Circuit does not favor the denial of class certification based on speculative, potential, or future conflicts such as this. *Soc. Servs. Union, Loc. 535, Serv. Emps. Int'l Union, AFL-CIO v. Santa Clara Cnty.*, 609 F.2d 944, 948 (9th Cir. 1979) ("Mere speculation as to conflicts that may develop at the remedy stage is insufficient to support denial of initial class certification."); *see also Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003) ("[T]his circuit does not favor denial of class certification on the basis of speculative conflicts"); *Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023) ("Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement.") (quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015)). The Court sees no conflict in counsel's participation in similar litigation, particularly when both cases seek common relief—lawful Diversity Visa adjudications. There is no showing that counsel's interests are "inherently opposed" to the class, and the Court finds Plaintiffs have provided sufficient information regarding their experience in federal court litigating similar claims for the Court to find them adequate representatives of the class. *See Sandoval v. M1 Auto Collisions Centers*., 309 F.R.D. 549, 570 (N.D. Cal. 2015).

The Court therefore finds Plaintiffs have sufficiently established adequacy. Accordingly, all Rule 23(a) factors are satisfied.

**2. Rule 23(b)**

Next, Plaintiffs seek to certify the class under Rule 23(b)(2), or alternatively, (b)(1).[6]

A (b)(2) class is limited to "injunctive relief or corresponding declaratory relief" and requires a showing that "the party opposing the class has acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360. "The key to the (b)(2) class is the indivisible nature of the injunctive or

[6] Finding certification under Rule 23(b)(2) appropriate, the Court need not examine alternative arguments under (b)(1).

United States District Court
Northern District of California

declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Id.* at 361 (internal quotation marks omitted).

Plaintiffs argue that classwide injunctive and declaratory relief against uniform federal conduct such as this is indivisible by design. *See Garcia v. Johnson*, No. 14-CV-01775-YGR, 2014 WL 6657591, at *16 (N.D. Cal. Nov. 21, 2014) (observing that "courts have certified nationwide classes that challenge the government's actions in enforcing the country's immigration laws," and "the practical consequences of not certifying a geographically limited class weigh in favor of nationwide certification" where the challenged conduct is a uniform federal practice); *accord MadKudu*, 2020 WL 7389419, at *9; *Parsons*, 754 F.3d at 689 (certifying (b)(2) class where relief is indivisible); *B.K.*, 922 F.3d at 970–71 (same).[7] Plaintiffs also contend that the government policies at issue here apply identically nationwide and to every consular post abroad, such that a geographically limited class would force similar litigation in multiple districts and risk inconsistent obligations on Defendants.

Defendants argue (b)(2) certification is inappropriate here because, if the Court were to grant Plaintiffs' request, two separate bodies of the government would need to lift three policies and adjudicate the class's applications according to each of their procedures within the demanded time schedule. Defendants also again highlight that there is no uniform answer to whether every proposed class member is entitled to a determination on their application within demanded schedule (i.e., some individuals are not eligible for an interview or who have already been denied the immigration benefit).

[7] Plaintiffs highlight this is the structured, rule-based path to classwide relief that *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), endorsed as the proper alternative to universal injunctions. *See also Pacito v. Trump*, 169 F.4th 895, 939 (9th Cir. 2026) (explaining that CASA "did not affect district courts' ability to issue class-wide injunctive relief," and "because a class has been certified, the district court's injunctions comply with CASA"); *see also Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Mullin*, 174 F.4th 81, 117 (D.C. Cir. 2026) ("The correct route to nationwide injunctive relief, CASA says, is to do exactly what Plaintiffs have done: conduct a proper class action following the procedure set out in Rule 23.") (internal citation and quotation marks omitted) (cleaned up).

United States District Court
Northern District of California

The Court finds (b)(2) certification of the three subclasses appropriate. An order, for example, granting Plaintiffs' request to vacate each of the Three Policies would provide a single, indivisible remedy that would provide relief to all subclasses. *See, e.g., Pacito v. Trump*, 796 F. Supp. 3d 692, 702 (W.D. Wash. 2025) (certifying three subclasses challenging four executive actions suspending and defunding the United States Refugee Admissions Program because "the requested relief would benefit Representative Plaintiffs and each subclass member equally, and no individual subclass member would call for different or separate relief") (citing *Parsons*, 754 F.3d at 688). Defendants' argument that it would be difficult for them to comply with any order requiring adjudication within a certain time period, or that there are individual issues with certain class members that may prevent them from actually having their applications adjudicated, is irrelevant. As the Court noted above, vacating the holds on adjudication would allow the agencies to process Plaintiffs' applications as if the holds were never enacted. If a Plaintiff's application is still not processed or approved after the Three Polices are vacated, it will—presumably—be on a lawful basis pursuant to the agencies' standard and statutorily-mandated internal processes, which are not being challenged here.

**3. Conclusion**

Accordingly, the Court **GRANTS IN PART** Plaintiffs' motion for class certification. The Court certifies the following subclasses:

1. All selectees and derivative beneficiaries under the FY-2026 Diversity Visa Program who are subject to the USCIS DV Hold imposed by Policy Memorandum PM-602-0193;
2. All selectees and derivative beneficiaries under the FY-2026 Diversity Visa Program who are subject to the DOS DV Pause; and
3. All selectees and derivative beneficiaries under the FY-2026 Diversity Visa Program who are subject to the DOS 75-Country Pause.

The Court appoints the named Plaintiffs as class representatives and appoints Curtis Lee Morrison, Jessica T. Arena, Alexander W. Loznak, Hamdy Maher Masri, Zhao Guo, Carolina

Solano, and Garrett Carter May as class counsel under Rule 23(g).

**B. Preliminary Injunction**

The Court now moves to Plaintiffs' motion for a preliminary injunction. To secure a preliminary injunction, a movant must make a clear showing that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20–22 (2008); Fed. R. Civ. P. 65. The moving party bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. This "clear showing" requires the plaintiff to "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id.* (emphasis in original). The Ninth Circuit has held that courts may balance "the elements of the preliminary injunction test . . . so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (internal quotation marks omitted).

**1. Likelihood of Success on the Merits**

While Plaintiffs argue they are likely to succeed on several claims, the Court need only examine one: arbitrary, capricious, and contrary to law under 5 U.S.C § 706(2)(A). *See Museum of Handcar Tech. LLC v. Transportation Agency for Monterey Cnty.*, 778 F. Supp. 3d 1065, 1079 (N.D. Cal. 2025), *vacated in part on other grounds*, No. 24-CV-08598-EKL, 2025 WL 1810265 (N.D. Cal. June 30, 2025) ("[A plaintiff] does not need to show a likelihood of success on every claim in order to obtain a preliminary injunction.").

As an initial matter, however, the Court addresses Defendants' argument that the Three Policies are not "final" agency actions subject to review under the APA. An agency action is "final" if it is: (1) the consummation of an agency's decision-making process, and (2) an action by which rights or obligations have been determined or from which legal consequences will flow. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). Courts take a "pragmatic" approach to

determining whether an agency action is final. *San Francisco Herring Ass'n v. Dep't of the Interio*r, 946 F.3d 564, 578 (9th Cir. 2019) (quoting *U.S. Army Corps. of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 599 (2016)).

Plaintiffs argue the Three Policies satisfy both *Bennett* requirements. First, Plaintiffs highlight that several courts have found that significant pauses and blanket moratoria on immigration applications such as these mark the consummation of an agency's decision-making process. *See Massachusetts v. Trump*, 790 F. Supp. 3d 8, 26 (D. Mass. 2025) ("[S]ignificant pauses and blanket moratoria are final agency actions that cannot be exempted from judicial review merely by being characterized as intermediate."). Second, Plaintiffs contend the Three Policies affect Plaintiffs' rights—by indefinitely pausing final adjudication, Plaintiffs lose the opportunity to obtain lawful permanent residency and all the benefits that accompany it, i.e., the ability to live, work, and study in the United States. And the possibility that the policies may be revised in the future does not defeat finality. "[T]he fact that a law may be altered in the future has nothing to do with whether it is subject to judicial review at the moment." *Appalachian Power Co. v. E.P.A.*, 208 F.3d 1015, 1022 (D.C. Cir. 2000).

Defendants' position is that "the Three Policies reflect 'nothing more than a statement of agency policy' that advises officers on implementation of INA requirements." Opp'n to PI Mot. 7 (quoting *Ass'n of Flight Attendants-CWA, AFL-CIO v. Huerta*, 785 F.3d 710, 717 (D.C. Cir. 2015)). Defendants also argue there is no "final" ruling on Plaintiffs' applications yet, citing cases dismissing APA claims because a delayed action was not a "final" action. *See, e.g., Mobayen v. Blinken*, 780 F. Supp. 3d 969, 984 (C.D. Cal. 2025).

The Court agrees with Plaintiffs' characterization of the policies. The Three Policies constitute significant pauses and blanket moratoria on immigration applications, marking the consummation of USCIS and DOS's decision-making process. The characterization of the policies as "temporary" does not exempt them from judicial review under the APA. Despite their temporary characterizations, there is no indication when, or if, they will be lifted or modified, and in the interim, the policies have upended the normal Diversity Visa processing procedures and had

immediate legal consequences on Plaintiffs.

Moving to the merits of Plaintiffs' § 706(2)(A) claim, "[t]he touchstone of arbitrary and capricious review under the APA is reasoned decisionmaking." *All. for the Wild Rockies v. Petrick*, 68 F.4th 475, 493 (9th Cir. 2023) (internal quotation marks and citations omitted). "That means an agency's action can only survive arbitrary or capricious review where it has articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id.* (internal quotation marks and citations omitted). "[I]f the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise," the agency's decisionmaking is insufficiently reasoned. *Id.* at 492 (quoting *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

The district court in *Ivanov, et al., v. Trump, et al.*, No. CV 26-2272 (RJL), 2026 WL 2494805, at *1 (D.D.C. Aug. 25, 2026), very recently held in a motion for summary judgment that these same Three Policies are arbitrary and capricious under the APA.[8] The Court agrees with this analysis and finds that Plaintiffs are likely to succeed here for the same three reasons.

First, the Court finds Defendants failed to provide a reasoned explanation to justify the scope of these three categorical policies. USCIS explains that it adopted the USCIS Hold due to several "considerations": (1) "President Trump has consistently expressed his strong concerns that the DV Program does not serve the interests of the United States and that the program, as structured and implemented, does not result in the immigration of people who are well-disposed to the good order and happiness of the United States and fails to keep our country safe"; (2) "President Trump has repeatedly urged Congress to end the program because of his concerns and to restructure our immigration system to better serve the country's needs"; and (3) "[t]he recent

[8] Plaintiffs in *Ivanov* did not seek class certification, so the court's order applied only to the plaintiffs named in that case. *See Ivanov*, 2026 WL 2494805, at *16.

United States District Court
Northern District of California

mass shooting at Brown University and the murder of a distinguished professor at the Massachusetts Institute of Technology allegedly committed by an alien admitted to the United States through this program again highlights the threat to our national security and public safety present in certain areas of our immigration system."[9] USCIS Hold, at 2–3. However, none of these safety and security "considerations" explain the necessity of a categorical suspension of all Diversity Visa adjustment of status applications, particularly given that the adjustment of status applicants are already present in the United States.

DOS similarly adopted the DOS DV Pause to ensure that the State Department can "adequately establish the identity of aliens who are selected through the DV entry lottery" because of "concerns raised by the shooting at Brown University and killing of an MIT professor suspected to have been committed by an individual admitted to the United States through the DV program." DOS DV Pause, at 1. But the treatment of criminal conduct committed by one former Diversity Visa beneficiary is not a reasoned ground to categorically refuse all Diversity Visa applicants, particularly given that Congress has already established individualized screening processes to address these identity verification concerns. *See Ivanov*, 2026 WL 2494805, at *10 ("Ultimately, the State DV Pause treats the criminal conduct of one former DV beneficiary as grounds to refuse visas for thousands of applicants across numerous countries, despite the individualized screening process already established by Congress.").

DOS also adopted the DOS 75-Country Pause because "President Trump has made clear that immigrants must be financially self-sufficient and not be a financial burden to Americans." DOS 75-Country Pause, at 1. There is no attempt in the policy itself to explain how this directive from the Executive Branch justifies a categorical pause on the individualized public charge review already statutorily required. *See Ivanov*, 2026 WL 2494805, at *11 ("By requiring consular officers to refuse visas based on an applicant's nationality even after an individualized review determines that the applicant is unlikely to become a public charge, the Public Charge Pause

[9] The USCIS Hold also notes one more criminal incident perpetuated by a Diversity Visa holder from 2017.

departs from Congress's prescribed framework without a reasoned explanation.”). Other records indicate that the policy was enacted because “the Council of Economic Advisors (CEA) recently found significant percentages of immigrants from certain countries use welfare.” Action Memo for the Secretary, ECF No. 55-5, at 51. But again here, this does not explain the need for a categorical ban in departure from Congress’s prescribed framework.

Second, there is no indication that DOS or USCIS considered any relevant alternatives that could have addressed the Government’s concerns while also preserving the ordinary operation of Congress’s carefully crafted Diversity Immigrant Visa Program. *See Stewart v. Azar*, 313 F. Supp. 3d 237, 264 (D.D.C. 2018) (noting that courts “cannot infer an agency's reasoning from mere silence or where the agency failed to address significant objections and alternative proposals”).

And third, there is no indication that DOS or USCIS considered the substantial reliance interests created by the prior operation of the Diversity Immigrant Visa Program. *See id.* When an agency changes course, it must consider whether the prior policy “engendered serious reliance interests that must be taken into account.” *Encino Motorcars, LLC v. Navarro,* 579 U.S. 211,222 (2016). While selection alone does not entitle Plaintiffs to a Diversity Visa, Defendants do not dispute that Plaintiffs have expended substantial time and money in reliance on the established Diversity Visa process.

Defendants’ failure to meaningfully engage in defending the decisionmaking process for each policy is telling. Defendants summarily argue in response:

> Throughout the Motion, Plaintiffs merely provide conclusory allegations that the Three Policies are arbitrary and capricious and ignores the stated purposes of those policies. But the record that the DOS entered in a parallel litigation reflect that the Three Policies were issued after careful consideration. *See* ECF No. 55-5 at 51-61 (memorandum for the Secretary of State recommending a pause on immigrant visa processing for certain countries and analyzing the immigrant welfare recipient rates by country of origin); *see also* ECF No. 55- 5 at 39-40 (reflecting the DOS’s deliberations of the DOS DV Pause).

Opp’n to PI Mot. 13 (internal citations omitted). Defendants make no attempt, however, to

United States District Court
Northern District of California

explain how the cited excerpts articulate "a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Alliance for the Wild Rockies*, 68 F.4th at 493.

The Court therefore finds Plaintiffs have shown a likelihood of success on the merits of their § 706(2)(A) claim.

**2. Irreparable Harm**

Moving to the next *Winter* factor, Plaintiffs each submitted a declaration attesting to various harms. The universal harm is the loss of the immigration opportunity itself, in addition to harms inherent in having lost employment, forfeited job offers, spent funds on interviews and travel, and endured months of family separation. Defendants generally characterize these harms as "remote and speculative" because Plaintiffs are not guaranteed that their applications will be approved, even if they are adjudicated.

The Court finds Plaintiffs have presented sufficient proof of irreparable harm at this time. *See, e.g., Bowser v. Noem*, No. 26-CV-10382-AK, 2026 WL 555624, at *9 (D. Mass. Feb. 27, 2026) (in case challenging USCIS policy memorandums, citing as irreparable harm inability to travel to visit family, inability to make basic life decisions, and significant emotional strain); *see also Am. Fed'n of Gov't Emps., AFL-CIO v. United States Off. of Pers. Mgmt.*, 781 F. Supp. 3d 920, 940–41 (N.D. Cal. 2025), *appeal dismissed*, No. 25-1677, 2025 WL 2976744 (9th Cir. Sept. 29, 2025) (holding that the "loss of opportunity to pursue [one's] chosen profession[ ] constitutes irreparable harm") (quoting *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014)). The Court also finds the fact that a Diversity Visa is not guaranteed irrelevant to the harm analysis; as the Court noted above, the universal and primary harm is the loss of the immigration opportunity itself. *See, e.g., Shahi v. Edlow*, No. 5:26-CV-03113-EJD, 2026 WL 2041468, at *6 (N.D. Cal. July 14, 2026) (finding irreparable harm despite uncertainty of visa approval); *Bowser,* 2026 WL 555624, at *9 (same).

**3. Balance of Equities & Public Interest**

Finally, in weighing the equities, courts "must balance the competing claims of injury and

must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citation omitted). Weighing the public interest, on the other hand, "primarily addresses impact on non-parties rather than parties." *CTIA - The Wireless Ass'n v. City of Berkeley, California*, 928 F.3d 832, 852 (9th Cir. 2019). These factors merge when the government is a party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Plaintiffs contend that there is no individualized national security concern as to any Plaintiff, and public interest favors prompt resolution of immigration applications. Defendants summarily argue in response that granting relief is not in the public's interest because it would place Plaintiffs ahead of others in the "line."

The Court finds the balance of equities and public interest weigh in Plaintiffs' favor. Defendants do not dispute that Plaintiffs pose no individualized threat to the public or national security, and enjoining Defendants from enforcing the Three Policies would require only that Defendants carry out their statutorily mandated duties. While Defendants may be required to carry out these duties on a more expedited schedule, there is no evidence that Defendants would be injured by such an order, no less *more* injured than Plaintiffs should no order be issued. The Court also notes that Defendants' "line-cutting" argument misses the mark. Having certified the subclasses above—which essentially cover all FY-2026 Diversity Visa applicants impacted by the Three Policies—the Court's orders in this case will apply to the entire "line," without interfering with the statutory rank-order processing provided in 8 U.S.C. § 1153(e)(2).

**4. Contents of the Preliminary Injunction**

Having found a preliminary injunction appropriate, the Court now examines what conduct the order should enjoin.

"'Vacatur is the normal remedy' when a court sets aside unlawful agency action under the APA." *Ivanov*, 2026 WL 2494805, at *16 (quoting *Long Island Power Auth. v. Fed. Energy Regul. Comm'n*, 27 F.4th 705, 717 (D.C. Cir. 2022), and 5 U.S.C. § 706(2)). Given that Plaintiffs are likely to succeed at least on the merits of their § 706(2)(A) claim, the Court will temporarily vacate the Three Policies pending further litigation. Further, to remedy Plaintiffs' impending

irreparable harm and ensure a return to the status quo, the Court finds it most reasonable to implement the remedy fashioned by Judge Leon in *Ivanov*, 2026 WL 2494805, at *16. The Court will direct DOS, to the extent practicable, to take all reasonable steps during the remainder of the Diversity Visa fiscal year to reconsider applications refused solely under the DOS DV Pause or the DOS 75-Country Pause and resume ordinary adjudication of pending applications. The Court will likewise order USCIS to resume ordinary adjudication of Plaintiffs' pending adjustment of status applications without applying the USCIS Pause. This Order does not foreclose the possibility of supplemental relief pending report on Defendants' good faith efforts to comply with these directives.

Plaintiffs' motion for a preliminary injunction is therefore **GRANTED IN PART**.

## III. CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** Plaintiffs' motion for class certification. The Court certifies the following subclasses:

1. All selectees and derivative beneficiaries under the FY-2026 Diversity Visa Program who are subject to the USCIS DV Hold imposed by Policy Memorandum PM-602-0193;
2. All selectees and derivative beneficiaries under the FY-2026 Diversity Visa Program who are subject to the DOS DV Pause; and
3. All selectees and derivative beneficiaries under the FY-2026 Diversity Visa Program who are subject to the DOS 75-Country Pause.

The Court also **GRANTS IN PART** Plaintiffs' motion for a preliminary injunction. The Court issues the following orders, applicable to members of all subclasses:

The Court temporarily **VACATES** the Three Policies pending further litigation.

The Court **ORDERS** DOS, to the extent practicable and in good faith, to take all reasonable steps during the remainder of the Diversity Visa fiscal year to reconsider applications refused solely under the DOS DV Pause or the DOS 75-Country Pause and resume ordinary adjudication of pending applications.

The Court **ORDERS** USCIS, to the extent practicable and in good faith, to take all reasonable steps during the remainder of the Diversity Visa fiscal year to resume ordinary adjudication of Plaintiffs' pending adjustment applications without applying the USCIS Pause.

The Court **ORDERS** the parties to file a joint status report by September 18 informing the Court of the status of adjudications and proposing a case schedule for the remainder of this litigation.

**IT IS SO ORDERED.**

Dated: August 28, 2026

EDWARD J. DAVILA
United States District Judge